UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

EMILY J. A.,                    )
                                )
            *Plaintiff*         )
                                )
v.                              )   No. 2:19-cv-00071-JDL
                                )
ANDREW M. SAUL,                 )
*Commissioner of Social Security,*[1] )
                                )
            *Defendant*         )

### *REPORT AND RECOMMENDED DECISION*[2]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in (i) exhibiting and considering the adverse decision of a prior ALJ, (ii) concluding that her physical impairments did not meet Listing 1.02A, Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), (iii) concluding that her mental impairments did not meet Listings 12.04 or 12.06, and (iv) assessing her residual functional capacity ("RFC"). *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 12) at 5-20. I find no harmful error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of obesity, major joint dysfunction, affective disorder, anxiety disorder, and disorder of the muscles, ligaments, and fascia, Finding 2, *id*. at 14; that she did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings, Finding 3, *id*. at 16; that she had the RFC to perform light work as defined in 20 C.F.R. §416.967(b), except that, in an eight-hour workday, she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, could never climb ladders, ropes, or scaffolds, and was able to perform simple routine tasks and adapt to simple changes in work routine, but could never work with the general public, Finding 4, *id*. at 18; that, considering her age (36 years old, defined as a younger individual, on the date her application was filed, June 4, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 27-28; and that she, therefore, had not been disabled from June 4, 2015, the date her application was filed, through May 30, 2018, the date of the decision, Finding 10, *id*. at 28-29. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Steps 3 and 4 of the sequential evaluation process. At Step 3, the claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 416.920(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 416.920(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813.

## I. Discussion

### A. Asserted Error in Exhibiting, Considering Prior ALJ Decision

The plaintiff first contends that the ALJ violated her due process rights in summarily overruling her counsel's objection at hearing to the inclusion in the record of a prior ALJ's adverse decision dated October 31, 2013 (the "2013 Decision"). *See* Statement of Errors at 5-7; Record at 40-41, 325-36.

"[A]pplicants for social security disability benefits are entitled to due process in the determination of their claims." *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001); *see also, e.g., Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005) ("Social security hearings are subject to procedural due process considerations."). "At a minimum, the Constitution requires notice and some opportunity to be heard. Above that threshold, due process has no fixed content; it is flexible and calls for such procedural protections as the particular situation demands." *Mallette v. Arlington Cty. Employees' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996) (citations and internal quotation marks omitted); *see also, e.g., Eze v. Gonzáles*, 478 F.3d 46, 47 (1st Cir. 2007) ("[N]otice and an opportunity to be heard together comprise an essential principle of due process[.]") (citations and internal quotation marks omitted).

To be entitled to remand on this basis, a Social Security claimant must demonstrate not only the existence of a due process violation but also resulting prejudice. *See, e.g., Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due process violation predicated on ALJ's denial of permission to submit post-hearing written question to vocational expert when "the ALJ's failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 F. App'x 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold

[a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing.").

The plaintiff falls short of showing either the existence of a procedural due process violation or resulting prejudice.

As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 2, agency policy requires ALJs to associate a prior hearing decision with a claimant's file, *see* Social Security Administration, Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-6-58(B) ("If there was a prior ALJ decision, the ALJ must associate the prior ALJ decision with the current claim(s) file."). The plaintiff's counsel, nonetheless, represented at oral argument that, in his experience, ALJs have either exercised discretion to exclude such decisions when he has objected on due process grounds or at least explained why the objection has been overruled.

However, in keeping with the requirements of the HALLEX, the ALJ in this case heard and ruled on the plaintiff's objection. *See* Record at 40-41; HALLEX § I-2-6-58(C) (ALJs must ask claimant or claimant's representative, if any, whether he or she has "any objections to admitting the proposed exhibits into the record" and then "[r]ul[e] on any objections to the proposed exhibits"). The plaintiff cites no authority for the proposition that, as a matter of constitutional due process, more was required, *see* Statement of Errors at 5-7, failing to demonstrate entitlement to remand on the basis of a due process violation, *see, e.g., Getchell v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00424-JAW, 2011 WL 4458983, at *6 (D. Me. Sept. 22, 2011) (rec. dec., *aff'd* Oct. 13, 2011) (declining to find a constitutional violation in the absence of citation to authority).

In any event, even assuming error, the plaintiff falls short of demonstrating that the error was prejudicial. While the plaintiff speculates that the ALJ considered and adopted the prior ALJ's opinions rather than undertaking a *de novo* assessment, *see* Statement of Errors at 6, the ALJ's decision on its face indicates otherwise. First, she mentioned the 2013 Decision solely in the context of observing that, "[i]n light of the current alleged onset date of June 1, 2015, reopening of the prior unfavorable decision is not currently at issue." Record at 12. Second, she did not adopt the same RFC as the prior ALJ. *Compare* Finding 4, *id*. at 18 *with* Finding 5, *id*. at 331. She discussed in detail the evidence postdating the 2013 Decision, including the plaintiff's testimony, expert opinions, medical records, and evidence of the plaintiff's activities, *see id*. at 19-27, and her physical RFC finding is identical to that set forth in the March 8, 2016, opinion of agency nonexamining consultant J.H. Hall, M.D., *compare* Finding 4, *id*. at 18 *with id*. at 373-74, which she accorded "greatest weight[,]" *id*. at 27. At bottom, the plaintiff makes no persuasive case that the ALJ's inclusion of the 2013 Decision in the record led to a different outcome.[3]

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Challenge to Finding re: Listing 1.02A

The plaintiff next contends that the ALJ erred in determining that her impairments did not meet Listing 1.02A, pertaining to major dysfunction of a joint. *See* Statement of Errors at 8-11.

---

[3] The plaintiff notes that Dr. Hall relied on and explicitly cited the prior ALJ's description of the August 2012 findings of genetics expert Jeff Milunsky, M.D., regarding the nature and severity of her Ehler Danlos Syndrome type II ("EDS"). *See* Statement of Errors at 6; Record at 372-74, 1558-60. At oral argument, her counsel contended that this was potentially prejudicial because Dr. Hall did not have the benefit of review of the underlying Milunsky report (Exhibit 29F), and the prior ALJ as a layperson had interpreted Dr. Milunsky's finding of "mild" EDS as a finding the condition was "insignificant." However, counsel provided no citation in support of that proposition, and I find none. Insofar as appears, Dr. Hall seemingly concluded that "[t]he EDS does not seem clinically significant," Record at 372, based on the prior ALJ's accurate statement that Dr. Milunsky had "characterized [the plaintiff's type II EDS] as a mild manifestation of the condition," *compare id*. at 332 *with id*. at 1559. The plaintiff also asserts, in passing, that Dr. Hall and the other agency nonexamining consultants considered medical evidence contained in Exhibits 2F through 7F that was considered by the prior ALJ and was relevant only to the prior claim. *See* Statement of Errors at 6. However, she does not argue that this underlying evidence should have been excluded from the record or make any showing that its inclusion was prejudicial. *See id*.

Listing 1.02A requires the following showing:

> 1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

Listing 1.02A. In turn, the phrase "inability to ambulate effectively" is defined as follows:

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing 1.00B(2)(b).

The ALJ found that the plaintiff did not have an impairment that met or equaled Listing 1.02 because "the evidence fails to demonstrate major dysfunction of a major peripheral weight-bearing joint resulting in the inability to ambulate effectively as defined in 1.00B2b[.]" Record at 16. The plaintiff contends that this assessment cannot stand because the ALJ "provided no explanation whatsoever – just two conclusions[,]" both of which "are wrong factually[.]"

7

Statement of Errors at 10. She posits that the ALJ either made this assessment as a layperson or relied on the opinions of agency nonexamining consultants that cannot stand as substantial evidence because they did not have the benefit of review of numerous subsequently submitted records. *See id*. at 10-11. Finally, she asserts that "there was medical evidence, expert medical opinions, and sworn testimony that supports a finding that [she had] very severe limitations in ambulation" and that "commonsense would at least suggest to a reasonable layperson who was informed of the [p]laintiff's history of obesity, EDS, and the orthopaedic treatments of [her] knee, that [she] would be expected to have significant difficulty managing walking over uneven surfaces at a reasonable pace, or walking over even smooth flat surfaces as [she] testified." *Id*. at 10.

As the commissioner rejoins, *see* Opposition at 4-9, the ALJ's finding that the plaintiff's impairments did not meet Listing 1.02A is supported by substantial evidence. Elsewhere in the ALJ's decision, she acknowledged that the plaintiff had testified that she was "unable to walk a lot[,]" "unable to walk from the front of a store to the back[,]" and "unable to stand upright for any length of time, limps, and must change positions." Record at 19-20. She also acknowledged that the plaintiff's treating physician, John Dickens, M.D., had expressed the opinion, *inter alia*, that the plaintiff was "unable to walk around a block on uneven surfaces at a reasonable pace, carry out routin[e] ambulatory activities, and ambulate effectively." *Id*. at 25 (citation omitted). However, she explained that she found the plaintiff's statements "not entirely consistent with the medical evidence and other evidence in the record[,]" *id*. at 20, and "the degree of limitations cited" by Dr. Dickens "not supported in his contemporaneous treatment records, and . . . not consistent with the record as a whole including the physical examination and radiographic findings, the treatment required and received, the reported activities of daily living, and the [agency

nonexamining consultants'] assessments[,]" *id*. at 25. She, therefore, accorded his opinion "little weight[.]" *Id*.

The ALJ further explained that she gave the opinions of agency nonexamining consultants Archibald Green, D.O., on initial review and Dr. Hall on reconsideration "the greatest weight[,]" deeming them "generally well supported and consistent with the record as a whole." *Id*. at 27. Drs. Green and Hall considered Listing 1.02 but went on to assess the plaintiff's RFC, *see id*. at 355-57, 372-74, thereby "signaling that [they] did not consider [the listing] to have been met or equaled[,]" *Carlin v. Berryhill*, No. 2:17-cv-000175-DBH, 2018 WL 2079504, at *4 (D. Me. May 4, 2018) (rec. dec., *aff'd* May 22, 2018). Finally, the ALJ acknowledged that evidence had been submitted subsequent to the Green and Hall opinions, but concluded that it "could not reasonably be expected to significantly alter the[ir] assessments." Record at 27.

In support of all of the above findings, the ALJ discussed the longitudinal record evidence in detail, noting, for example:

> While . . . grade three to four changes in the lateral tibial plateau were noted during a December 2015 surgical procedure on the right knee, . . . radiographic studies of the knees in December 2016 and in February 2018 showed only slight medial joint space narrowing with joint space narrowing of the medi[]al compartment in the right knee, and a very small spur on the lateral facet in the left knee. Further radiographic and/or imaging studies of the knees do not appear to have been performed.
>
> While the [plaintiff] underwent an arthroscopic chondroplasty of the lateral tibial plateau on the right knee on December 18, 2015, the evidence of record fails to demonstrate that she has required additional surgical intervention on either knee at any time since then. Since her surgery, [she] has received only conservative care in the form of a few Synvisc injections, a hinged knee brace, home stretching exercises, and . . . pain medications. She does not appear to have sought or received alternate treatment modalities for her knee condition. Although pool therapy was advised in December 2016, the medical evidence of record fails to demonstrate that she ever followed through with that treatment recommendation. Although the [plaintiff] uses a cane at times, it is unclear from the evidence of record that this is medically necessary or prescribed.

9

*Id*. at 21-22 (citations omitted).

The plaintiff does not meaningfully challenge these findings. She does not separately challenge the ALJ's rationales for according her subjective statements and the Dickens opinion little weight. *See* Statement of Errors at 8-11.[4] Nor does she identify the specific later-submitted record evidence that she contends undermines the ALJ's reliance on the Green and Hall opinions. *See id.*

An ALJ may rely on the opinions of agency nonexamining consultants who have not seen later-submitted evidence when that evidence does not "call into question their conclusions[.]" *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. 2013). "While an [ALJ] is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material[.]" *Id*. (citation and internal quotation marks omitted).

In generally discussing the evidence that she asserts demonstrates that her impairments met Listing 1.02A, the plaintiff does highlight notes of treating surgeon Joseph F. Scordino, M.D., pointing out that (i) Dr. Scordino described her right knee degenerative joint disease as "grade 3 to 4 in the weightbearing area of the tibial plateau[,]" (ii) she required "three post-surgery Synvisc injections" in the four months following surgery, evidencing that her knee remained symptomatic, and, (iii) in a December 9, 2016, note, Dr. Scordino indicated that she had "trouble going up and down stairs" but that, as a result of her EDS, cortisone shots were contraindicated. Statement of

---

[4] Indeed, at oral argument, the plaintiff's counsel clarified that the plaintiff does not challenge the decision to accord little weight to the Dickens opinion but, rather, to accord the greatest weight to the "stale" opinions of the agency nonexamining consultants.

Errors at 8-9. However, she does not explain, and it is not self-evident, how these records call into question the ALJ's reliance on the Green and Hall opinions or her finding that the plaintiff's impairments did not meet Listing 1.02A.

Remand, accordingly, is unwarranted on the basis of this point of error.

### C. Challenge to Findings re: Listings 12.04, 12.06

The plaintiff next contends that the ALJ's finding that her depression and anxiety did not meet Listings 12.04 or 12.06 is unsupported by substantial evidence because she (i) had no expert assistance, (ii) failed to consider examples set forth in those listings, instead relying on irrelevant activities of daily living, and (iii) ignored the opinions of treating therapist Dean Martin, LCPC. *See id*. at 11-15.

On the first point, the plaintiff contends that, because (i) the so-called "Paragraph B" criteria of the listings were revised effective January 17, 2017, after agency nonexamining consultants Brian Stahl, Ph.D., and Thomas Knox, Ph.D., had rendered their opinions in this case, and (ii) the ALJ never mentioned either opinion at Step 3, she seemingly evaluated the listings as a layperson. *See id.* at 11-12, 14; Record at 354, 371. However, the ALJ explicitly relied in part on Drs. Stahl's and Knox's opinions that the plaintiff was only moderately limited in the former Paragraph B criteria of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, with no repeated episodes of decompensation. *See* Record at 27 (according the Stahl and Knox opinions the "greatest weight"); *see also id*. at 354, 371.[5] That she engaged in this discussion in a different section of her decision is immaterial. *See, e.g., DiPietro v. Colvin*, No. 2:14-cv-203-JHR, 2015 WL 1757244, at *4-5 (D. Me. Apr. 17, 2015)

---

[5] The revised Paragraph B criteria are as follows: "'[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3). To satisfy the Paragraph B criteria of Listings 12.04 and 12.06, a claimant must demonstrate either a marked limitation in two of those domains or an extreme limitation in one of them. *See* Listings 12.04B, 12.06B.

(remand unwarranted on basis that ALJ failed to discuss expert's evaluation in Listings portion of her decision).

As the commissioner observes, *see* Opposition at 10, this court has rejected the argument that an agency nonexamining consultant's opinion is necessarily undermined by his or her use of the former Paragraph B criteria, *see John S. v. Soc. Sec. Admin. Comm'r*, 1:18-cv-00089-LEW, 2019 WL 459711, at *5 (D. Me. Feb. 6, 2019) (rec. dec., *aff'd* Mar. 4, 2019) (holding that claimant's "argument that a relatively minor change in the regulation renders the pre-modification opinions unreliable is unavailing"; observing that, although "the consulting experts did not directly opine on the new criterion" of the ability to adapt or manage oneself, "[p]resumably, any assessment of the impact of a mental health issue on a person's ability to work considers the person's ability to manage himself or herself").

The plaintiff did not argue in her statement of errors, *see* Statement of Errors at 11-15, or through counsel at oral argument, that the remaining revised Paragraph B criteria differ sufficiently from the former ones to undermine the ALJ's reliance on the Stahl and Knox opinions.

Nor does the plaintiff make a persuasive showing that remand is warranted based on the ALJ's failure to discuss examples in Listing 12.00E of the types of mental functioning at issue. She neither cites authority that such examples must be discussed by an ALJ nor argues that, had they been discussed, the result would have been different. *See* Statement of Errors at 11-15.[6]

---

[6] Examples of the ability to understand, remember, or apply information include, *inter alia*, "[u]nderstanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; [and] describing work activity to someone else[.]" Listing 12.00E(1). Examples of the ability to interact with others include, *inter alia*, "cooperating with others; asking for help when needed; [and] handling conflicts with others[.]" *Id*. 12.00E(2). Examples of the ability concentrate, persist, or maintain pace include, *inter alia*, "[i]nitiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; [and] completing tasks in a timely manner[.]" *Id*. 12.00E(3). Finally, examples of the ability to adapt or manage oneself include, *inter alia*, "[r]esponding to demands; adapting to changes; [and] managing your psychologically based symptoms[.]" *Id*. 12.00E(4). In each case, Listing 12.00 provides that the "examples illustrate the nature of this area of mental functioning" and that the commissioner does "not require documentation of all of the examples." *Id*. 12.00E(1)-(4).

The plaintiff further contends that the ALJ erred in citing "basically the same factors from one functional criteria to the next as if there were no distinguishing characteristics separating one of the functional areas from the next[,]" and "was highly selective in the examples of [her] activities[,]" ignoring contrary evidence. *Id*. at 12.

I find no error in the ALJ's reliance on many of the same activities of daily living in discussing each of the four Paragraph B criteria. For example, the ALJ reasonably relied on the plaintiff's ability to maintain friendships and socialize *via* telephone, email, and Facebook in support of her findings that the plaintiff had no more than moderate limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, and maintaining pace. *See* Record at 16-17.

Nor do I find that the ALJ's reliance on the plaintiff's activities of daily living was misplaced. The plaintiff asserts that she generally struggles with most of those activities and that the ALJ relied on activities that were not "the norm" and had been cited by providers "because they represent[ed] accomplishments[,]" for example, going to school with her son, attending a funeral and visiting with family afterward, and cooking with her mother. Statement of Errors at 12. However, as the commissioner points out, *see* Opposition at 14, the ALJ cited multiple records in support of the plaintiff's ability to perform most of the activities at issue, *see* Record at 16-18, in addition to relying on the examiners' findings that her judgment was either adequate and good and her memory was intact, and on the absence of any notation that she was socially inappropriate, *see id*. at 17-18.

Finally, the plaintiff's complaint that the ALJ ignored the opinions of treating therapist Martin is not well-taken. As noted above, while the ALJ did not address the opinion evidence at Step 3, she addressed it at Step 4, evaluating each opinion in its totality, not only insofar as it bore

on Step 4.  *See, e.g.*, *id*. at 25 (acknowledging that therapist Martin assessed, *inter alia*, marked and extreme degrees of limitation but concluding that this was "not supported in his contemporaneous treatment records, and appear[ed] to be based in large part on the [plaintiff]'s subjective allegations, particularly where he indicate[d] 'patient reports' on multiple occasions on the March 2017 form") (citation omitted).  The plaintiff does not separately challenge the ALJ's rationales for according the Martin opinions little weight.  *See* Statement of Errors at 11-15.

Remand, accordingly, is unwarranted on the basis of this point of error.

### D. Challenge to RFC Determination

The plaintiff, finally, challenges the ALJ's physical and mental RFC determinations.  *See id*. at 15-20.  She contends that the ALJ's physical RFC finding is unsupported by substantial evidence because, once the ALJ rejected the opinions of Dr. Dickens, she "was left without medical expert opinions to support the found RFC other than the [agency nonexamining] consultants, but their opinions were based on a review of a fraction of the relevant evidence; they did not have the benefit of the opinions of the treating physician; and they improperly reviewed, considered and were influenced by the opinions of [the prior ALJ][.]"  *Id*. at 19.

These points are unavailing.  Again, the plaintiff does not meaningfully challenge the ALJ's determination that the record evidence postdating the Green and Hall opinions "could not reasonably be expected to significantly alter the[ir] assessments[,]" Record at 27, as supported by the ALJ's detailed discussion of the longitudinal record evidence, *see id*. at 20-27.  While the plaintiff points to some later-submitted evidence that she asserts is inconsistent with the ALJ's finding that she could tolerate the amount of standing and walking required for light work, *see* Statement of Errors at 18, "[t]he mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand[,]" *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11,

2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019); *see also, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

That Drs. Green and Hall did not have the benefit of review of the Dickens opinions, the rejection of which the plaintiff does not separately challenge, *see* Statement of Errors at 15-20, is immaterial, *see, e.g., Vining v. Astrue*, 720 F. Supp. 2d 126, 133 (D. Me. 2010) (when ALJ supportably discounted opinion of treating physician, the fact that agency nonexamining consultant had not seen that opinion had "no bearing on the question of whether [the consultant's] own report c[ould] serve as substantial evidence of the [claimant]'s mental RFC"); *see also, e.g., Ball v. Soc. Sec. Admin. Comm'r*, No. 2:14-cv-61-JDL, 2015 WL 893008, at *6 (D. Me. Mar. 2, 2015) (fact that agency nonexamining consultant had not seen treating physician's opinion was "immaterial" when ALJ supportably gave that opinion little weight); *Strout v. Astrue*, Civil No. 08-181-B-W, 2009 WL 214576, at *9 (D. Me. Jan. 28, 2009) (rec. dec., *aff'd* Mar. 5, 2009) (same).

Finally, as discussed above, the ALJ did not err in including the prior ALJ decision in the record and, in any event, the plaintiff has failed to show that any error was prejudicial.

Turning to the ALJ's mental RFC finding, the plaintiff argues that, in relying in part on the opinions of agency examining consultant Donna M. Gates, Ph.D., the ALJ failed to acknowledge the import of Dr. Gates' statement that "[s]he likely relates well to others when she is emotionally stable but socially isolates when she is depressed[,]" which she asserts was consistent with her therapist's opinion that she was severely depressed and isolated herself. Statement of Errors at 19; Record at 1186. She describes this as "a further indication of the prejudicial impact of the ALJ's decision to admit and consider" the 2013 Decision. Statement of Errors at 19-20.

15

As the commissioner rejoins, *see* Opposition at 20, with the benefit of review of the Gates report, which they accorded great weight, both Drs. Stahl and Knox concluded that the plaintiff remained able to interact with supervisors and co-workers but not with the public within the context of simple work, *see* Record at 355, 358-59, 372, 375-76. In turn, for the reasons discussed above, the ALJ supportably gave the Stahl and Knox opinions great weight. Nothing indicates that either Dr. Stahl or Dr. Knox was improperly swayed by the 2013 Decision, which neither mentioned. *See id*. at 353-59, 369-76. In any event, as discussed above, the plaintiff has failed to show prejudicial error in the ALJ's inclusion of that decision in the record.[7]

Remand, accordingly, is unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of January, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[7] The plaintiff also asserts that the finding that she "could persist with a steady productive work pace is not supported by substantial evidence and conflicts even with commonsense in light of the impact [her] pain has on her functionality[,]" a proposition for which she cites a note from therapist Martin indicating that her pain level was often so high that she was unable to remain focused for any period of time. Statement of Errors at 19 & n.22; Record at 1441. As the commissioner rejoins, *see* Opposition at 20, this point does not carry the day because the ALJ identified substantial evidence to the contrary, including objective observations that the plaintiff had intact memory and was oriented and alert and the plaintiff's own report that she read, used a computer, and watched television without apparent difficulty concentrating or persisting, *see* Record at 16-17, 22-23.