## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **EMILY A.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **2:19-cv-00071-JDL** |
| | ) | |
| **ANDREW M. SAUL, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Emily A. appeals the Social Security Administration Commissioner's final decision determining that she is not disabled and denying her application for supplemental security income (ECF No. 1).  Pursuant to 28 U.S.C.A. § 636(b)(3) and D. Me. Local R. 16.3(a)(2), United States Magistrate Judge John H. Rich, III held a hearing on Emily A.'s Statement of Errors (ECF No. 12) on September 18, 2019.  The Magistrate Judge filed his Recommended Decision with the Court on January 13, 2020 (ECF No. 19), recommending that the Court affirm the Commissioner's decision. Emily A. objected to the Recommended Decision on January 27, 2020 (ECF No. 20).

After reviewing and carefully considering the Magistrate Judge's Recommended Decision, together with the parties' arguments and the entire record, I have made a *de novo* determination of those portions of the Recommended Decision to which Emily A. objects.  For the reasons explained below, I conclude that a remand of the case to the Commissioner is warranted.

# I.  BACKGROUND

Emily A. claims she is disabled and entitled to supplemental security income benefits based on her diagnoses of degenerative joint disease in both knees; Ehlers-Danlos Syndrome Type II, Classic ("EDS"); extreme obesity with edema; migraine headaches; sleep apnea; depression; and anxiety.  An administrative law judge ("ALJ") determined that she is not disabled and denied her application for supplemental security income benefits.  Emily A. appeals the ALJ's decision.

## A.    Social Security Disability Standard

ALJs undertake a five-step sequential evaluation process for analyzing supplemental security income claims based on disability.  *See* 20 C.F.R. § 416.920 (West 2020).  The claimant carries the burden of production on the first four steps, and the burden shifts to the Commissioner at step five.  *See Purdy v. Berryhill*, 887 F.3d 7, 9–10 (1st Cir. 2018).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See id.* at 10.  If so, the claimant's application for supplemental security income is denied.  *See id.*  If not, the analysis proceeds to step two, at which the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  *See id.*  If the claimant's impairments are not severe, the claimant's application is denied.  *See id.*  If the claimant has an impairment or combination of impairments that is severe, the analysis proceeds to step three.

At step three, the ALJ must determine whether the claimant's severe impairment or combination of impairments either (1) meets the conditions for one or more "listed" impairments under the Social Security regulations or (2) medically

2

equals one or more listed impairments.  *See* § 416.920(a)(4)(iii), (d).  An impairment or combination of impairments medically equals a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment."  § 416.926(a). Listed impairments are also known as "listings."  *Compare* § 416.920(a)(4)(iii), *with* § 416.920(d).  If the claimant's severe impairment or combination of impairments meets or medically equals one or more listings, the claimant's application is granted.  *See Purdy*, 887 F.3d at 10.  If not, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the most work activity the claimant can still do despite the claimant's limitations, and the analysis proceeds to step four.  *See* § 416.920(e), 416.945(a)(1).

At step four, the ALJ must determine whether, based on the RFC found at step three, the claimant can still perform past relevant work.  *See Purdy*, 887 F.3d at 10. If so, the claimant's application is denied.  *See id.*  If not, the analysis proceeds to step five, at which the ALJ must consider the claimant's age, education, work experience, and RFC and determine whether the claimant is able to perform any other work.  *See id*.  If the claimant can perform other work, the claimant's application is denied.  *See* § 416.920(a)(4)(v).  If the claimant cannot perform any other work, the application is granted.  *See id.*

## B.    Decision of the Administrative Law Judge

At step one, the ALJ determined that Emily A. had not engaged in substantial gainful work activity since June 4, 2015, the application date.  At step two, the ALJ determined that Emily A. has several severe impairments, namely obesity, major joint dysfunction, affective disorder, anxiety disorder, and disorder of the muscles,

3

ligament, and fascia.  Emily A. does not challenge the ALJ's determinations at step one or step two.

At step three, the ALJ determined that Emily A.'s severe impairments, in isolation or in combination, do not meet or medically equal the listed impairments described in Listing 1.02A, Listing 1.02B, Listing 12.04, or Listing 12.06.  The ALJ then found that Emily A. has the physical RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), except that she can only "occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs" and can "never climb ladders, ropes or scaffolds."  ECF No. 7-2 at 19.  The ALJ further found that Emily A. has the mental RFC to perform "simple routine tasks, and adapt to simple changes in work routine," but that she can "never work with the general public."  *Id.*  Emily A. challenges several of the ALJ's determinations at step three.

At step four, the ALJ determined that Emily A. is unable to perform any past relevant work.  At step five, the ALJ determined that there are jobs existing in significant numbers in the national economy that Emily A. can perform, considering her age, education, work experience, and RFC.  Accordingly, the ALJ concluded that Emily A. is not disabled and denied her application for supplemental security income.

## C.  Standard of Review

The administrative decision must be affirmed if it is based on the correct legal standards and on factual findings that are supported by substantial evidence.  *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam).  A factual finding is supported by substantial evidence if the existing administrative record contains "such relevant evidence as a reasonable mind might

accept as adequate to support [the] conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). This is so "even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6 (1st Cir. 2018) (per curiam) (unpublished decision) (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222–23 (1st Cir. 1981)). By contrast, a factual finding is not supported by substantial evidence if it is "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citations omitted).

## II. ANALYSIS

Emily A. asserts that remand is warranted because the ALJ made three findings that are not supported by substantial evidence. Specifically, she challenges: (1) the ALJ's finding that her physical impairments do not meet or medically equal Listing 1.02A, (2) the ALJ's finding that her mental impairments do not meet or medically equal either Listing 12.04 or Listing 12.06, and (3) the ALJ's determination of her RFC.[1] I address each argument in turn.

### A.   Listing 1.02A: Major Dysfunction of a Joint

First, Emily A. challenges the ALJ's conclusion that her impairments do not meet or medically equal Listing 1.02A. Listing 1.02A defines "major dysfunction of a joint" as a listed impairment if it involves "one major peripheral weight-bearing joint

---

[1] Emily A. also argues that the ALJ violated her right to procedural due process by admitting into evidence the 2013 administrative decision by a different ALJ, which denied a prior unrelated disability claim by Emily A. For the reasons set forth in the Recommended Decision, I conclude that Emily A. is not entitled to remand on this basis. To the extent that Emily A. suggests that the ALJ violated her due process rights by prejudging her present claim based on the denial of her earlier claim, this argument fails for the same reasons. *See Parent v. Colvin*, No. 2:15-cv-415-JHR, 2016 WL 4506980, at *2–3 (D. Me. Aug. 26, 2016); *cf. Spicher v. Berryhill*, 898 F.3d 754, 756–57 (7th Cir. 2018).

(i.e., hip, knee, or ankle)" and results in "inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02A. "Inability to ambulate effectively" means a very serious interference with the "ability to independently initiate, sustain, or complete activities" such as traveling to a place of employment or school without companion assistance; walking without the use of a walker, two crutches, or two canes; walking a block at a reasonable pace on rough or uneven surfaces; using standard public transportation; carrying out routine ambulatory activities such as shopping and banking; or climbing a few steps with a single hand rail at a reasonable pace. *Id.* § 1.00B2b.

The ALJ concluded that Emily A.'s impairments do not meet or medically equal Listing 1.02A because "the evidence fails to demonstrate major dysfunction of a major peripheral weight-bearing joint resulting in the inability to ambulate effectively." ECF No. 7-2 at 17. Emily A. asserts that the ALJ's conclusion is unsupported by substantial evidence because the ALJ did not explain the conclusion or consider relevant medical evidence to the contrary. The relevant medical evidence Emily A. refers to includes medical records from her orthopedist, Joseph F. Scordino, MD, and the medical opinion of her primary care physician, John Dickens, MD.

Courts in this District have held that remand is not warranted based on an ALJ's failure to discuss certain evidence regarding a listing where (1) the evidence cited by the claimant does not meet the listing, and (2) the claimant fails to explain how the listing was medically equaled. *See Carlin v. Berryhill*, No. 2:17-cv-00175-DBH, 2018 WL 2079504, at *4 (D. Me. May 4, 2018) (citing *Burnham v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00246-GZS, 2012 WL 899544, at *3 (D. Me. Mar. 15,

2012)), *adopted by* 2018 WL 2347060 (D. Me. May 22, 2018). Thus, to establish that she is entitled to remand, Emily A. must show that Dr. Scordino's records and Dr. Dickens' opinion, collectively, would indicate that her impairments either meet or medically equal Listing 1.02A.

I begin with Dr. Scordino's records. According to Emily A., Dr. Scordino's records indicate that she (1) underwent surgery on her right knee, (2) was diagnosed with grade three to grade four changes in the lateral tibial plateau of her right knee, (3) required three Synvisc injections to manage pain in the months following her surgery, (4) received additional diagnoses and treatment for pain in her left knee, (5) exhibited an antalgic gait, or limp, and (6) had trouble going up and down stairs.

These facts do not establish that Emily A. is unable to ambulate effectively and thus do not establish that her impairments meet Listing 1.02A. As to the first four points, evidence of diagnosis and treatment alone does not necessarily establish an inability to ambulate effectively. *See, e.g.*, *Webber v. Barnhart*, No. 03-163-B-W, 2004 WL 1529273, at *3−4 (D. Me. Apr. 30, 2004), *adopted by* 2004 WL 1571803 (D. Me. May 19, 2004); *cf. Sitar v. Schweiker*, 671 F.2d 19, 20−21 (1st Cir. 1982); *Parent v. Colvin*, No. 2:15-cv-415-JHR, 2016 WL 4506980, at *4−5 (D. Me. Aug. 26, 2016). As to the fifth and sixth points, Dr. Scordino's records indicate that Emily A. exhibited an antalgic gait and had difficulty with stairs only intermittently. As the Commissioner contends, these intermittent symptoms do not show that Emily A. is unable to ambulate effectively because intermittent functional limitations cannot establish that a claimant's impairments meet a medical listing. *See Sawyer v. Colvin*, No. 1:12-cv-231-JAW, 2013 WL 1760534, at *3 (D. Me. Mar. 30, 2013), *adopted by*

2013 WL 1760524 (D. Me. Apr. 24, 2013); *see also Myers v. Berryhill*, No. 3:18-cv-30122-KAR, 2019 WL 3976017, at *15 (D. Mass. Aug. 21, 2019) (citing 20 C.F.R. § 416.925(c)(3)−(4)).

Even if Dr. Scordino's records suggested that Listing 1.02A might be met, the ALJ cited Dr. Scordino's records and specifically considered the first five points when crafting Emily A.'s RFC. Because the ALJ's findings regarding Emily A.'s RFC are consistent with the ALJ's conclusion that Listing 1.02A has not been met, that conclusion is supported by substantial evidence, and remand is not warranted. *See, e.g., Carlin*, 2018 WL 2079504, at *3−5, *4 n.3 (holding that an ALJ's bare conclusion regarding a listing was supported by substantial evidence where the ALJ relied on a consultant's treatment of the relevant evidence in another portion of the decision).

Remand is also not warranted based on the ALJ's failure to address the medical opinion of Dr. Dickens, Emily A.'s primary care physician, in the portion of the decision discussing Listing 1.02A. Dr. Dickens circled statements on a form indicating that Emily A. is unable to walk around a block on uneven surfaces at a reasonable pace and unable to carry out routine ambulatory activities. As the Commissioner asserts, Dr. Dickens' opinion is conclusory and thus is not itself objective evidence showing that Emily A. is unable to ambulate effectively. *See King v. Astrue*, No. CIV 09-337-P-H, 2010 WL 4457447, at *7 n.3 (D. Me. Oct. 31, 2010) (rejecting a medical opinion that the claimant could not ambulate effectively in part because the doctor did not give examples supporting this conclusion), *adopted by* 2010 WL 4823921 (D. Me. Nov. 22, 2010); *see also Bourret v. Colvin*, No. 2:13-cv-00334-JAW, 2014 WL 5454537, at *4 (D. Me. Oct. 27, 2014) ("[A]n administrative law judge

is not required to credit a physician's conclusions when they are expressed on a check-box form when those conclusions are not supported by clinical findings." (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 46 F.3d 1114 (1st Cir. 1995) (unpublished table decision))).

Even if Dr. Dickens' opinion could have established that Emily A. is unable to ambulate effectively, the Commissioner contends that the ALJ properly discounted Dr. Dickens' opinion in another portion of the decision.   Specifically, when determining Emily A.'s RFC, the ALJ found Dr. Dickens' opinion unsupported by his contemporaneous treatment records and inconsistent with "the record as a whole including the physical examination and radiographic findings, the treatment required and received, the reported activities of daily living, and the State agency assessments."  ECF No. 7-2 at 26.  The State agency assessments consist of opinions offered by two agency nonexamining consultants, Archibald Green, DO, and J.H. Hall, MD.   In conducting his assessment, Dr. Green considered the record as of September 17, 2015.  Dr. Hall considered the record as of March 8, 2016.  After Dr. Green and Dr. Hall completed their assessments, but prior to her hearing before the ALJ, Emily A. submitted over 560 additional pages of medical evidence in support of her application, including Dr. Dickens' opinion.

Emily A. asserts that the later-submitted records support Dr. Dickens' opinion and call Dr. Green and Dr. Hall's assessments into question.  Thus, Emily A. argues that the later-submitted records render the ALJ's decision to discount Dr. Dickens' opinion unsupported by substantial evidence.  However, most of the records Emily A. relies on were considered during one or both State agency assessments, not submitted

later.  Of the records that were in fact submitted later, most indicate enlargement and effusions in the knees, joint pain, joint laxity, and, at times, an abnormal gait. These symptoms are also reflected in the records that Dr. Green and Dr. Hall considered.  The only new symptoms that Emily A. identifies in the later-submitted records are swelling in her elbows and decreased range of motion in her shoulders, which do not bear on Emily A.'s ability to ambulate effectively.[2]  Thus, the later-submitted records do not undermine the ALJ's decision to accord little weight to Dr. Dickens' opinion, at least insofar as it bears on Emily A.'s ability to ambulate effectively.

Because the ALJ properly discounted the relevant aspects of Dr. Dickens' opinion in another portion of the decision, the ALJ's failure to address the same opinion when discussing Listing 1.02A does not render the ALJ's determination as to the listing unsupported by substantial evidence, as noted above.  "Remand for the placement of [a] paragraph in [an] earlier section of the administrative law judge's opinion would be an empty exercise." *DiPietro v. Colvin*, No. 2:14-cv-203-JHR, 2015 WL 1757244, at *5 (D. Me. Apr. 17, 2015); *see also Christopher B. v. Berryhill*, No. 2:17-cv-00502-JAW, 2018 WL 5786210, at *3 n.2 (D. Me. Nov. 4, 2018), *adopted by* 2019 WL 97019 (D. Me. Jan. 3, 2019).

Thus, Emily A. has not established that Dr. Dickens' opinion or Dr. Scordino's records, alone or together, would support a finding that her impairments meet Listing 1.02A.  Nor does she explain how her impairments medically equal the listing. Accordingly, the ALJ's failure to address this evidence when discussing Listing 1.02A

---

[2]  I discuss the records related to these symptoms in greater detail below.  *See infra* Part II.C.1.

does not warrant remand.  Emily A. objects, arguing that the record "would at least suggest to a reasonable layperson" that she would have "significant difficulty managing walking over uneven surfaces at a reasonable pace" and thus that she is unable to ambulate effectively.  ECF No. 12 at 10.  Even assuming a reasonable layperson could draw the inference Emily A. suggests, that alone does not warrant remand.  As noted above, if an ALJ's decision is supported by substantial evidence, it must be affirmed "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Human Servs.,* 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

## B.    Listings 12.04 and 12.06: Mental Disorders

Emily A. also challenges the ALJ's determinations regarding Listings 12.04 and 12.06, which define when certain mental disorders constitute listed impairments. Listing 12.04 considers depressive and bipolar disorders, and Listing 12.06 considers anxiety and obsessive-compulsive disorders.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.  Paragraph B of both listings establishes that each disorder meets its respective listing if it causes "extreme limitation of one" or "marked limitation of two" of four areas of mental functioning.[3]  *Id.* §§ 12.00A2b, 12.00F, 12.04B, 12.06B.  The four areas of mental functioning are known as the "paragraph B" criteria.  *See id.* §§ 12.00A2b, 12.00E, 12.00F.

---

[3] Such disorders may also meet or medically equal a listing if a claimant establishes that they suffer a "serious and persistent" mental disorder, as defined in paragraph C of Listing 12.04 and Listing 12.06.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04C, 12.06C.  The ALJ determined that Emily A. does not suffer a serious and persistent mental disorder, and Emily A. does not challenge that determination.  Accordingly, I do not address it further.

11

Emily A. challenges the ALJ's conclusion that her mental impairments do not meet or medically equal Listing 12.04 or 12.06.  The Magistrate Judge found that this conclusion was supported by substantial evidence based on the ALJ's analysis of the evidence in the record, including the opinions of two agency nonexamining consultants, Brian Stahl, Ph.D., and Thomas Knox, Ph.D.  Dr. Stahl and Dr. Knox, who assessed Emily A.'s mental impairments on September 18, 2015, and March 1, 2016, respectively, evaluated Emily A.'s impairments according to the paragraph B criteria in effect at the time, which were:

> (1) activities of daily living,
> (2) social functioning,
> (3) concentration, persistence, or pace, and
> (4) episodes of decompensation.

See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C (effective Sept. 29, 2016 to Jan. 16, 2017).

The paragraph B criteria were subsequently amended, effective January 17, 2017, to establish the following new criteria:

> (1) understanding, remembering, or applying information,
> (2) interacting with others,
> (3) concentrating, persisting, or maintaining pace, and
> (4) adapting or managing oneself.

See 20 C.F.R. § 416.920a(c)(3) (effective Jan. 17, 2017 to Mar. 26, 2017); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E (effective Jan. 17, 2017 to Mar. 26, 2017).  In addition to prescribing the new paragraph B criteria, the January 2017 amendment provided definitions of each criterion and included examples that "illustrate the nature of [each] area of mental functioning."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E

(effective Jan. 17, 2017 to Mar. 26, 2017).  In these respects, the January 2017 amendment remains in effect today.  *See* 20 C.F.R. § 416.920a(c)(3) (West 2020); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E (West 2020).  The ALJ denied Emily A.'s application for supplemental security income on May 30, 2018, after the adoption of the new paragraph B criteria.  In doing so, the ALJ accorded Dr. Stahl and Dr. Knox's opinions "the greatest weight."  ECF No. 7-2 at 28.

Emily A. objects that the ALJ was not authorized to rely on the opinions of Dr. Stahl and Dr. Knox because they were based on paragraph B criteria that were no longer in effect when the ALJ denied her application in May 2018.  The Commissioner responds that the January 2017 amendment to the paragraph B criteria was not so substantive as to render opinions relying on the earlier criteria unreliable or irrelevant.  I need not address this issue because even if the ALJ erred by relying on Dr. Stahl and Dr. Knox's opinions, any such error was harmless.  The ALJ systematically analyzed the evidence in the record under each of the four amended paragraph B criteria.  *See* ECF No. 7-2 at 17−19.  Even if the ALJ did so "without the benefit of an expert opinion," that "does not, in itself, demonstrate reversible error" because the ALJ "neither overlooked any expert opinion concerning the matter nor was obliged as a matter of law to call an expert."  *Davis B. v. Berryhill*, No. 1:18-cv-00009-LEW, 2019 WL 495580, at *3 (D. Me. Feb. 8, 2019), *adopted by* 2019 WL 1264862 (D. Me. Mar. 19, 2019).[4]

---

[4] To the extent that Emily A. argues that the ALJ improperly overlooked the opinion of her counselor, Dean Martin, LCPC, I find that this argument is without merit for the reasons set forth below.  *See infra* Part II.C.2.

Emily A. also argues that the ALJ misapplied the new paragraph B criteria by citing activities of daily living as evidence bearing on each criterion.  However, when adopting the January 2017 amendment, the Commissioner explained that "any given activity, including [activities of daily living], may involve the simultaneous use of the paragraph B areas of mental functioning."  Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 66,143 (Sept. 26, 2016) (codified at 20 C.F.R. Pts. 404, 416).  As such, activities of daily living are "a source of information about all four of the paragraph B areas of mental functioning."  *Id.* at 66,144.  Thus, the ALJ did not err by viewing Emily A.'s activities of daily living as evidence under each of the four paragraph B criteria.

Emily A. further objects that the ALJ misapplied the new paragraph B criteria by failing to reference any of the examples discussed in Listing 12.00E when determining the extent of Emily A.'s limitations under each criterion.  However, as the Commissioner argues, the ALJ was not required to explicitly discuss the examples enumerated in the regulations when analyzing the paragraph B criteria.  By contrast, Listing 12.00E specifically and repeatedly states that the examples simply serve to "illustrate the nature of [each] area of mental functioning" embodied in the paragraph B criteria, and that "documentation of all of the examples" is not required.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E (effective Mar. 14, 2018).  The Commissioner asserts that the applicable regulations only require that ALJs "include a specific finding as to the degree of limitation" under each paragraph B criterion and state the "significant history" supporting each finding.  ECF No. 21 at 6 (quoting 20 C.F.R. § 416.920a(e)(4)).  The ALJ here satisfied these requirements by making specific

findings under each of the paragraph B criteria based on evaluations by examiners, notes by treatment providers, and activities of daily living. *See* ECF No. 7-2 at 17–19. Because Emily A. has not identified any authority imposing an additional duty upon the ALJ to measure claimants' functional limitations against the examples set forth in the regulations, I find that the ALJ did not err by failing to do so. Accordingly, I conclude that the ALJ's determinations regarding Listings 12.04 and 12.06 are supported by substantial evidence.

## C.    Residual Functional Capacity

Finally, Emily A. asserts that the RFC crafted by the ALJ is unsupported by substantial evidence. The ALJ found that Emily A. has the physical RFC to perform "light work," as defined in 20 C.F.R. § 416.967(b), except that she can only "occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs" and can "never climb ladders, ropes, or scaffolds." ECF No. 7-2 at 19. The ALJ further found that Emily A. has the mental RFC to perform "simple routine tasks, and adapt to simple changes in work routine," but that she can "never work with the general public." *Id.* In making these findings, the ALJ gave the "greatest weight" to the opinions of the agency nonexamining consultants discussed above. *Id.* at 28.

Emily A. asserts that the ALJ's RFC determination is not supported by substantial evidence because the agency nonexamining consultants did not review the more than 560 pages of medical records she submitted after they completed their assessments. However, "the fact that an agency nonexamining consultant has not reviewed the full record is not necessarily fatal to an ALJ's reliance on that consultant's opinion." *Robert L. v. Berryhill*, No. 1:17-cv-00348-JDL, 2018 WL

3599966, at \*6 (D. Me. July 27, 2018), *adopted by* 2018 WL 3901157 (D. Me. Aug. 15, 2018).  Generally, "[a]n ALJ may rely on the opinions of agency nonexamining consultants who have not seen later-submitted evidence" so long as "that evidence does not 'call into question their conclusions.'" *Michael L. v. Saul*, No. 2:18-cv-00208-LEW, 2019 WL 3061201, at \*4 (D. Me. July 12, 2019) (quoting *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at \*4 (D. Me. Sept. 27, 2012)), *adopted sub nom. Michael L. v. Soc. Sec. Admin. Comm'r*, 2019 WL 4016201 (D. Me. Aug. 26, 2019).  One of the factors to be considered is "whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the ALJ.'" *Robert L.,* 2018 WL 3599966, at \*6 (alterations omitted) (quoting *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at \*5 (D. Me. Dec. 29, 2010)).

Here, the ALJ determined that the later-submitted evidence "could not reasonably be expected to significantly alter" the agency nonexamining consultants' opinions.  ECF No. 7-2 at 28.  Emily A. objects that the ALJ was not competent to make this determination without consulting a medical expert because "an ALJ is not permitted to interpret raw medical evidence."  ECF No. 20 at 9.  It is true that an ALJ usually may not "assess a claimant's RFC directly from the raw medical evidence." *Michael L.*, 2019 WL 3061201, at \*4 (quoting *Anderson*, 2012 WL 5256294, at \*4).  But an ALJ "is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia*, judging whether later submitted evidence is material," *id.* (quoting *Anderson*, 2012 WL 5256294, at \*4), as the ALJ did here.

A separate question remains whether substantial evidence supports the ALJ's finding that the opinions of the agency nonexamining consultants remain reliable in light of the later-submitted records. *See Julianne M. F. v. Saul*, No. 1:18-cv-00469-GZS, 2020 WL 616162, at *3 (D. Me. Feb. 10, 2020), *adopted by* 2020 WL 908110 (D. Me. Feb. 25, 2020).  I address this question with respect to Emily A.'s physical RFC as well as her mental RFC.

### 1.    Physical Residual Functional Capacity

As discussed above in the context of Listing 1.02A, the later-submitted records are largely consistent with the records that were considered by the agency nonexamining consultants who assessed Emily A.'s physical RFC, Dr. Green and Dr. Hall.  However, as Emily A. points out, the later-submitted records also contain evidence of swelling in her elbows and decreased range of motion in her shoulders. This evidence is not cumulative, as these symptoms are not reflected in the records that Dr. Green and Dr. Hall reviewed.  Nor was this evidence supportably discounted by the ALJ.  By contrast, the ALJ failed to consider the evidence, incorrectly finding that physical examinations of Emily A.'s joints have been negative for both swelling and limitation of motion.  *See* ECF No. 7-2 at 21.  Because the ALJ failed to consider the evidence in the later-submitted records reflecting new and potentially significant symptoms in Emily A.'s elbows and shoulders, the ALJ erred in finding that the later-submitted records could not reasonably be expected to significantly alter Dr. Green and Dr. Hall's opinions about Emily A.'s upper-extremity limitations.  *See Nguyen*, 172 F.3d at 35.  Accordingly, the ALJ's reliance on Dr. Green and Dr. Hall's opinions when determining Emily A.'s upper-extremity limitations is not supported by

substantial evidence.  *See, e.g.*, *Kaseman v. Colvin*, No. SACV 15-922-KK, 2016 WL 695973, at *7 (C.D. Cal. Feb. 19, 2016).[5]

Though it is possible that the ALJ would have crafted the same RFC after properly accounting for the evidence of Emily A.'s new elbow and shoulder symptoms, the responsibility for weighing evidence "falls on the Commissioner and his designee, the ALJ," not the reviewing court.  *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001) (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also Applebee*, 744 F. App'x at 6 (citing *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).  Thus, vacatur and remand are required for reconsideration of Emily A.'s upper-extremity limitations in her RFC and for consideration of whether, in view of those limitations, she can perform any past relevant work or other work.

### 2.    Mental Residual Functional Capacity

I now turn to whether the ALJ supportably found that the later-submitted records "could not reasonably be expected to significantly alter" the opinions of Dr. Stahl and Dr. Knox, the agency nonexamining consultants who opined as to Emily A.'s mental RFC.  ECF No. 7-2 at 28.  In forming their opinions, Dr. Stahl and Dr. Knox considered earlier-submitted records from Dr. Dickens as well as mental status examinations conducted by consultative examiners.  The later-submitted records

---

[5] The ALJ's failure to consider the evidence of Emily A.'s new elbow and shoulder symptoms also raises a question as to whether the ALJ supportably discounted Dr. Dickens' opinion about Emily A.'s upper-extremity limitations, as Dr. Dickens was the only medical source to consider this evidence. *See, e.g.*, *Williams v. Saul*, No. 3:16CV01777(SALM), 2019 WL 5388098, at *7 (D. Conn. Oct. 22, 2019). Because I conclude that remand is warranted for the reasons explained above, I do not reach or address this issue.

bearing on Emily A.'s mental RFC primarily consist of treatment records and an opinion from her treating mental health specialist, Dean Martin, LCPC.

The ALJ considered Martin's treatment records and impliedly deemed them cumulative of the evidence that Dr. Stahl and Dr. Knox considered, indicating that Martin's observations of Emily A.'s symptoms were typically consistent with how she was described by consultative examiners.  Emily A. attempts to undermine this conclusion by pointing to a single note by Martin that she is "unable to remain focused for any period of time."  ECF No. 12 at 19 n.22.  However, as noted by the Magistrate Judge, the ALJ indicated that this note was inconsistent with the weight of the evidence in the record, including observations by Martin and other examiners, mental status examinations, and Emily A.'s activities of daily life.  Thus, the ALJ's finding that Martin's treatment records are consistent with the preexisting record is supported by substantial evidence. *See Anderson*, 2012 WL 5256294, at *4 (upholding an ALJ's determination that the later-submitted records were "essentially cumulative" where the plaintiff's condition was "essentially unchanged as measured by recorded observations over that period . . . and by the 'great many activities' he pursued").[6]

The ALJ also considered the opinion Martin offered about Emily A.'s mental RFC and supportably discounted it, finding that it was unsupported by his contemporaneous treatment records.  The ALJ further found that Martin's opinion was largely based on Emily A.'s subjective allegations about her symptoms, which the

---

[6]  Though Martin's treatment records may contain new complaints of mental difficulties by Emily A., her subjective complaints alone do not call Dr. Stahl and Dr. Knox's opinions into question. *See John M. v. Berryhill*, No. 1:17-cv-00452-JHR, 2018 WL 6272888, at *6–7 (D. Me. Nov. 30, 2018).

ALJ determined were inconsistent with the record as a whole.  Because the ALJ supportably discounted Martin's opinion, the fact that Dr. Stahl and Dr. Knox did not review it "has no bearing" on the reliability of their reports.  *See Julia C. v. Saul*, No. 2:18-cv-00334-DBH, 2019 WL 3855313, at *6 (D. Me. Aug. 16, 2019) (quoting *Vining v. Astrue*, 720 F. Supp. 2d 126, 133 (D. Me. 2010)), *adopted by* 2019 WL 5270199 (D. Me. Oct. 17, 2019).  Because neither Martin's treatment records nor his opinion call Dr. Stahl and Dr. Knox's opinions into question, the ALJ reasonably relied on Dr. Stahl and Dr. Knox's opinions in determining Emily A.'s mental RFC.  Therefore, I conclude that the mental RFC assessed by the ALJ is supported by substantial evidence.

### III.  CONCLUSION

For the reasons discussed above, it is **ORDERED** that the Recommended Decision of the Magistrate Judge (ECF No. 19) is hereby **ACCEPTED IN PART** and **REJECTED IN PART**.  It is further **ORDERED** that the Commissioner's decision is **VACATED**, and the matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this opinion.

**SO ORDERED.**

Dated:  May 14, 2020

_____/s/ Jon D. Levy_____
**CHIEF U.S. DISTRICT JUDGE**